No. 24-1714

---

United States Court of Appeals
for the First Circuit

---

HARLAN SHABSHELOWITZ,
Plaintiff-Appellant

v.

STATE OF RHODE ISLAND DEPARTMENT OF PUBLIC SAFETY, STATE
POLICE and LIEUTENTANT MICHAEL CASEY, individually and in his
capacity as a police officer employed by the State of Rhode Island,

Defendants-Appellees

---

Appeal from the United States District Court for the
District of Rhode Island

---

**BRIEF OF APPELLANT
HARLAN SHABSHELOWITZ**

---

Gary G. Pelletier (#99083)
PELLETIER CLARK & CALEY, LLC
35 Touro Street
Newport, RI 02840
Tel. (401) 849-4400
Fax (401) 619-3451
gpelletier@pcclaw.net

V. Edward Formisano (#69370)
FORMISANO AND COMPANY
100 Midway Place, Suite 1
Cranston, RI  02920-5707
Tel. (401) 944-9691
Fax (401) 944-9695
edf@formisanoandcompany.com

*Counsel for Plaintiff-Appellant
Harlan Shabshelowitz*

Dated: January 22, 2025

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................... iii

STATEMENT OF JURISDICTION...................................................................... 1

STATEMENT OF THE ISSUES........................................................................... 1

STATEMENT OF THE CASE.............................................................................. 2

SUMMARY OF THE ARGUMENT ..................................................................... 6

ARGUMENT ....................................................................................................... 7

  A.   The District Court Committed Reversible Error When it Concluded that Mr. Shabshelowitz had a Right or Opportunity to Appeal the Superior Court's Denial of his Motion to Dismiss the Indictment ........................................... 7

  B.   The District Court Committed Reversible Error When it Concluded that Collateral Estoppel Applied Because the Motion to Dismiss in State Court Constituted a Final Judgment ...................................................................... 10

CONCLUSION.................................................................................................... 12

CERTIFICATE OF COMPLIANCE.................................................................... 13

CERTIFICATE OF SERVICE ............................................................................ 14

ADDENDUM ...................................................................................................... 15

# TABLE OF AUTHORITIES

**Cases**

Pinkney v. Keane,
　920 F.2d 1090 (2d Cir. 1990) ...........................................................8

Solitro v. Moffatt,
　523 A.2d 858 (R.I. 1987)...............................................................8

State v. Amaro,
　448 A.2d 1257 (R.I. 1982) ..................................................9

State v. Berberian,
　411 A.2d 308 (R.I. 1980) ...........................................................9

State v. Bianculli,
　330 A.2d 897 (R.I. 1975) .................................................. 9, 10

State v. Burke,
　2006 WL 2536703, at *3 (R.I. Super Ct. Aug. 31, 2006) .............................11

State v. Chase,
　588 A.2d 120 (R.I. 1991) ...........................................................11

State v. DiPrete,
　682 A.2d 1373 (R.I. 1995) ............................................8, 9, 10, 11

State v. Jenison,
　405 A.2d 3 (R.I. 1979)...............................................................8, 10

State v. Paradis,
　18 A.2d 342 (R.I. 1941) ..................................................9

Wiggins v. Rhode Island,
　326 F. Supp.2d 297 (D.R.I. 2004) ............................................. 7, 8, 10

**Statutes**

28 U.S.C. § 1291 ................................................................................1

42 U.S.C. § 1983 ................................................................................1

**Federal Rules**

Federal Rule of Appellate Procedure Rule 4(a)(1)(A). ...........................................1

**State Rules**

Rhode Island Rule of Criminal Procedure 48(a) .................................................5, 11

## STATEMENT OF JURISDICTION

Plaintiff Harlan Shabshelowitz invoked the jurisdiction of the district court pursuant to 42 U.S.C. § 1983.  The district court entered a final judgment in the docket on July 22, 2024.  Plaintiff filed a timely notice of appeal on August 1, 2024 within 30 days after the district court's entry of final judgment as delineated in Rule 4(a)(1)(A) of the Federal Rules of Appellate Procedure.  Plaintiff invokes the jurisdiction of this court pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

(1)     Did the District Court commit reversible error when it granted the State of Rhode Island's motion for summary judgment based on the doctrine of collateral estoppel when it erroneously concluded that Plaintiff had a right to appeal a Rhode Island State Superior Court's decision denying Plaintiff's motion to dismiss based on prosecutorial misconduct?

(2)     Did the District Court commit reversible error when with it granted the State of Rhode Island's motion for summary judgment based on the doctrine of collateral estoppel when it erroneously concluded that the Rhode Island State Superior Court had entered a final judgment when it denied Plaintiff's motion to dismiss for prosecutorial misconduct?

**STATEMENT OF THE CASE**

This civil rights action for malicious prosecution arose from a real estate transaction that occurred in September of 2006. RA14.[1] Specifically, an individual known as Frederick Carrozza, Sr. sold his home at 375 Ocean Road in Narragansett, Rhode Island to Eugene O'Brien and his brother Timothy O'Brien. The O'Brien brothers purchased the Narragansett property for $2.4 million dollars. RA41.

At the time of the purchase of the Narragansett property, Plaintiff Harlan Shabshelowitz was an investor and part-owner in a mortgage company based in Fall River, Massachusetts. RA42. Prior to the purchase of the property, Mr. Shabshelowitz knew both Eugene O'Brien and Frederick Carozza. RA42. Knowing that Carozza wanted to sell his property, Mr. Shabshelowitz introduced him to Eugene O'Brien as a perspective buyer. RA42. On September 11, 2006, the O'Brien brothers purchased Carozza's Narragansett property. RA42. According to a United States Housing and Urban Development ("HUD") document, Mr. Shabshelowitz would receive $330,000 for his role in the sale. RA43.

An organization known as Coastway Credit Union supplied the financing for the O'Brien brothers purchase of the property. RA43. In December of 2006, Eugene O'Brien refinanced the property through the Countrywide Home Loans

---

[1] RA refers to the Record Appendix.

company.  RA43.  Eugene O'Brien also removed his brother, Timothy O'Brien, from the title to the Narragansett home.  RA43.  Eventually, Eugene O'Brien defaulted on the loan, and Countrywide Home Loans foreclosed on the property. As a result of the default and foreclosure, the lending institutions sustained combined losses of $1.67 million plus foreclosure costs, taxes and attorney fees. RA44,

In August of 2010, Lieutenant Michael Casey of the Rhode Island State Police commenced an investigation into the propriety of the purchase and sale of Carozza's Narragansett home.  RA44.  Casey claims he suspected that the O'Brien brothers were merely straw buyers who facilitated a fraud upon the lending institutions.  RA44-45. Casey and Assistant Attorney General J. Patrick Youngs, III, engaged the services of a forensic auditor named Thomas Andolfo of the Andolfo Appraisal Association to perform a forensic audit.  RA46.  Andolfo concluded that appraisals conducted on the property prior to the sale were not credible or defensible.  RA46.

In December of 2011, the Rhode Island State Police arrested the O'Brien brothers on charges of obtaining money under false pretenses and conspiracy to obtain money under false pretenses.  On March 7, 2012, the Department of the Rhode Island Attorney General convened a statewide grand jury to present evidence of suspected mortgage fraud.  The State's theory centered on whether the

participants in the real estate transaction intentionally inflated the value of the property using the O'Brien brothers as straw buyers. RA48.

As part of the investigation into the suspected mortgage fraud, Lieutenant Casey interviewed Mr. Shabshelowitz. RA46. Initially, the State of Rhode Island viewed Mr. Shabshelowitz as a witness but later regarded him as a suspect after receiving information from unindicted coconspirator, RA50. David Gauthier, who reported that Mr. Shabshelowitz attended meetings where the other participants discussed the financing of the Narraganset real estate transaction. RA50.

Thirteen months after it initially convened, the statewide grand jury returned indictments charging the O'Brien brothers, Robert Carozza, Verna Gauthier (who provided the appraisal supporting the value of the property at the time of the sale), an individual named Kenneth Mollicone, and Mr. Shabshelowitz on charges of conspiracy to obtain money over $1500 under false pretenses. RA48. Mr. Shabshelowitz moved to dismiss the indictment in Providence Superior Court on the basis of prosecutorial misconduct before the grand jury. ADD[2]4 Specifically, Mr. Shabshelowitz alleged that the State though its primary testifying witness, Lieutenant Casey, provided false evidence leading to the decision to indict, tampered with a tape of Mr. Shabshelowitz's interview with Lieutenant Casey, and

---

[2] "ADD" refers to the Addendum.

withheld an insurance appraisal known as the Chubb Insurance Report, that matched the mortgage value. ADD4.

Following an evidentiary hearing, a Superior Court Magistrate denied Mr. Shabshelowtiz's dismissal motion. ADD4. Mr. Shabshelowitz appealed the Magistrate's decision to a Superior Court Judge who upheld the denial of the dismissal motion. ADD4. Several months later, the Department of the Attorney General dismissed the mortgage fraud action against Mr. Shabshelowitz pursuant to Rhode Island Superior Court Rule of Criminal Procedure 48(a). ADD4.

In 2020, Mr. Shabshelowitz filed the instant civil rights action in the United States District Court for the District of Rhode Island. ADD 4. The civil rights complaint alleged that the State of Rhode Island and Lieutenant Casey engaged in the tort of malicious prosecution when they knowingly presented false and misleading evidence to the grand jury that resulted in his indictment. ADD4-5. The State of Rhode Island and Lieutenant Casey moved to dismiss the civil rights action pursuant to Rule 56 of the Federal Rules of Civil Procedure. ADD5. The defendants alleged that, taking the evidence in a light most favorable to the non-moving party, no factfinder could find in favor of the Plaintiff. The defendants also claimed that the doctrine of collateral estoppel bars Mr. Shabshelowitz's malicious prosecution claim. ADD5.

On July 22, 2024, the district court granted the Defendants' summary judgment motion. ADD1. The district court found that collateral estoppel barred Mr. Shabshelowtiz's malicious prosecution claim because he fully litigated identical issues in state court and he did not appeal the Superior Court's decision. ADD7-10, The district court did <u>not</u> address the Defendants' lack of a genuine issue of material fact contention. ADD6.

## <u>SUMMARY OF THE ARGUMENT</u>

The District Court committed reversible error when it concluded that the doctrine of collateral estoppel applies in this case. First, the District Court erroneously based its decision upon the faulty premise that Mr. Shabshelowitz had a right to appeal from the Superior Court's denial of his motion to dismiss the indictment on prosecutorial misconduct grounds. Mr. Shabshelowitz had no right to appeal. The Rhode Island Supreme Court has long and repeatedly held that a defendant in a criminal matter aggrieved by the denial of a motion to dismiss has no right of direct appeal or a right to seek a writ of certiorari until the conclusion of the case except in exceptional well-delineated circumstances such as double jeopardy, collateral estoppel, or lack of subject matter jurisdiction. None of the delineated exceptions apply in this case.

The second reason why the doctrine of collateral estoppel is in applicable in this case is because the doctrine requires a final judgment on the merits. The

Rhode Island Supreme Court has long held that a defendant has no right to a direct appeal or a petition for a writ of certiorari because a denial of a motion to dismiss prior to trial is <u>not</u> a final judgment. Appealing it would involve an interlocutory action. An interlocutory appeal is not an appeal from a final judgment. As a non-final judgment, the decision on the motion to dismiss does not meet the requirements for the application of collateral estoppel.

<u>**ARGUMENT**</u>

**A. <u>The District Court Committed Reversible Error When it Concluded that Mr. Shabshelowitz had a Right or Opportunity to Appeal the Superior Court's Denial of his Motion to Dismiss the Indictment</u>**

The District Court committed reversible error when it granted the Defendants' motion for summary judgment based on the doctrine of collateral estoppel. Collateral estoppel "requires: (1) an identify of issues, (2) a valid and <u>final judgment</u> on the merits, and (3) establishing that the party against whom collateral estoppel is asserted was a party or is in privity with a party to the prior action." <u>Wiggins v. Rhode Island</u>, 326 F. Supp.2d 297, 303 (D.R.I. 2004)(emphasis added). An action for malicious prosecution requires a plaintiff to prove by a preponderance of the evidence that "(1) defendants initiated a prior criminal proceeding against him, (2) they did not have probable cause to initiate such a proceeding, (3) the proceeding was instituted maliciously, and (4) it

terminated in [the plaintiff's] favor." Solitro v. Moffatt, 523 A.2d 858, 816-862 (R.I. 1987).

After determining that an identify of issues existed between the state court motion to dismiss based on prosecutorial misconduct and the federal civil rights action based on malicious prosecution, the District Court examined whether Mr. Shabshelowitz had a full and fair opportunity to litigate the identical issues in the Superior Court. The District Court concluded that the Superior Court permitted him a full and fair opportunity to present his issues through an evidentiary hearing "[a]nd Mr. Shabshelowitz did not appeal the Superior Court decision: failure to appeal an adverse judgment negates the preclusive effect of that judgment only when review was unobtainable as a matter of law. Where review is available but is not sought, estoppel applies. District Court Order at 10 (quoting Wiggins, 326 F.Supp.2d at 305)(internal quotations omitted)(citing Pinkney v. Keane, 920 F.2d 1090, 1096 (2d Cir. 1990)).

Here, appellate review was unavailable. The Rhode Island Supreme Court has long held that a party may not appeal the denial of a motion to dismiss prior to the final disposition of a case as a matter of right or through a petition for a writ of certiorari except under special and unique circumstances. State v. DiPrete, 682 A.2d 1373, 1376 (R.I. 1995); State v. Jenison, 405 A.2d 3, 5 (R.I. 1979)("Because that ruling was interlocutory, the appeal was premature and therefore cannot be

entertained"); <u>State v. Bianculli</u>, 330 A.2d 897 (R.I. 1975)("Pursuant to the writ the records in the case were certified to this court, and an examination thereof discloses a total absence of any evidence tending to establish that defendant's contentions raise <u>special or unusual circumstances or conditions</u> sufficient to take the case out of our well-settled principle that this court will not review a cause piecemeal")(emphasis added); <u>State v. Paradis</u>, 18 A.2d 342, 245 (R.I. 1941)(Refusing to recognize a petition for a writ of certiorari from a motion to dismiss challenging a grand jury on the grounds that if it were to permit a petition for certiorari in similar circumstances "there would be little left of the well-established principle of our appellate procedure that this court will not review a cause piecemeal").

The special and limited circumstances allowing for an appeal of an interlocutory order such as a motion to dismiss include instances of double jeopardy and collateral estoppel. <u>DiPrete</u>, 682 A.2d at 1376; <u>State v. Berberian</u>, 411 A.2d 308, 309-310 (R.I. 1980)(approving a right to an appeal of an interlocutory order rooted in double jeopardy concerns). The Rhode Island Supreme Court has also granted a petition for a writ of certiorari before trial where the defendant raised a question of whether the court possessed subject matter jurisdiction over the alleged offense. <u>State v. Amaro</u>, 448 A.2d 1257, 1260

(holding that a fetus is not a person within the meaning of the Rhode Island motor vehicle homicide law).

Here, none of the limited exceptions articulated in <u>DiPrete</u>, <u>Bianculli</u>, <u>Berberian</u>, or <u>Amaro</u> such as double jeopardy, collateral estoppel or subject matter jurisdiction exist.  Under Rhode Island law, Mr. Shabshelowitz had no cognizable right to appeal automatically or by petition for a writ of certiorari.  Absent a special or unusual circumstance, the Rhode Island Supreme Court does not permit an appeal of an interlocutory order either automatically or by a petition for a writ of certiorari.  As review was not obtainable as a matter of law, the District Court incorrectly faulted him for failing to pursue an appeal.  As the absence of a non-frivolous appeal process deprived him of a full and fair opportunity to litigate his motion to dismiss in state court, collateral estoppel does not apply in this federal court action.

## B. <u>The District Court Committed Reversible Error When it Concluded that Collateral Estoppel Applied Because the Motion to Dismiss in State Court Constituted a Final Judgment</u>

The District Court committed reversible error when it concluded that the Defendants had met the requirements for collateral estoppel without analyzing whether a final judgment had occurred in the state court.  Collateral estoppel requires a valid and final judgment on the merits.  <u>Wiggins</u>, 326 F.Supp.2d at 303.

Here, no final judgment exists in the state court on the motion to dismiss for prosecutorial misconduct.

The Rhode Island Supreme Court has repeatedly held that the "denial of a motion to dismiss a criminal action [is] not a final judgment from which an appeal [can] be taken." DiPrete, 682 A.2d at 1376 (emphasis added); see also, State v. Chase, 588 A.2d 120, 122 (R.I. 1991)(" Ordinarily, denial of a motion to dismiss in a criminal action is not a final judgment from which an appeal may be taken"); Jenison, 405 A.2d at 5 (denial of a motion to dismiss is a non-final interlocutory decision). Hence, even if this Court were to conclude somehow that Mr. Shabshelowitz should have filed a frivolous petition for a writ of certiorari to the Rhode Island Supreme Court in derogation of clearly established Rhode Island Supreme Court precedent, a final judgment on the merits would not have existed. The denial of a motion to dismiss in a criminal action prior to trial or disposition is not a final judgment. Absent a final judgment, collateral estoppel does not apply.[3]

---

[3] Defendants cannot rely upon the later dismissal pursuant to Rhode Island Rule of Criminal Procedure 48(a) to argue for the application of collateral estoppel. Rule 48(a) is a nolle prosequi vests the Rhode Island Attorney General with the sole discretion to dismiss a criminal action prior to trial. State v. Burke, 2006 WL 2536703, at *3 (R.I. Super Ct. Aug. 31, 2006). "As the determination to dismiss is made independently of the Court, it is not a determination on the merits." Id. As the right to dismiss a criminal matter prior to trial lies within the exclusive power of the State, a defendant cannot appeal or challenge a nolle prosecui unless trial has commenced. R.I. Super. Ct. R. Crim. P. 48(a).

## CONCLUSION

For the foregoing reasons, the Court should reverse the decision of the District Court entering summary judgment in favor of Defendants.

Respectfully submitted,

 /s/ Gary G. Pelletier
Gary G. Pelletier (#99083)
PELLETIER CLARK & CALEY, LLC
35 Touro Street
Newport, RI 02840
Tel. (401) 849-4400
Fax (401) 619-3451
Email: gpelletier@pcclaw.net

V. Edward Formisano (#69370)
FORMISANO AND COMPANY
100 Midway Place, Suite 1
Cranston, RI  02920-5707
Tel. (401) 944-9691
Fax (401) 944-9695
edf@formisanoandcompany.com

*Counsel for Plaintiff-Appellant*
Dated: January 22, 2025          *Harlan Shabshelowitz*

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>

Certificate of Compliance With Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

i.        This brief complies with the type-volume limitation of Fed. R. App. P.

32(a)(7)(B)(i) because this brief contains 2,512 words, excluding the parts of the

brief exempted by Fed. R. App. P. 32(f).

ii.        This brief complies with the typeface requirements of Fed. R. App. P.

32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this

brief has been prepared in a proportionally spaced typeface using Word 2010 in 14

point Times New Roman type.


/s/ Gary G. Pelletier
Gary G. Pelletier (#99083)

Attorney for Plaintiff-Appellant
Harlan Shabshelowitz


Dated: January 22, 2025

## CERTIFICATE OF SERVICE

I, Gary G. Pelletier, hereby certify that on January 22, 2025, that a true, copy of the attached Plaintiff-Appellant Harlan Shabshelowitz's brief filed through the ECF system will be sent electronically to the following registered participants as identified on the Notice of Electronic Filing on January 22, 2025.

Jeff Kidd, Esquire
Office of the Attorney General
150 South Main Street
Providence, RI 02903
jkidd@riag.ri.gov

Andrew Plocica, Esquire
Rajaram Suryanarayan, Esquire
Gunning & LaFazia, Inc.
33 College Hill Road, Suite 25B
Warwick, RI 02886
aplocica@gunninglafazia.com
rsury@gunninglafazia.com

/s/ Gary G. Pelletier
Gary G. Pelletier (#99083)
PELLETIER CLARK & CALEY, LLC
35 Touro Street
Newport, RI 02840
Tel. (401) 849-4400
Fax (401) 619-3451
Email: gpelletier@pcclaw.net

*Counsel for Plaintiff-Appellant*
*Harlan Shabshelowitz*

**ADDENDUM**

# ADDENDUM TABLE OF CONTENTS

Order Granting Defendants' Motion for Summary Judgment,
Dated July 22, 2024 ......................................................................Add. 1

Judgment,
Dated July 22, 2024 ....................................................................Add. 12

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

HARLAN SHABSHELOWITZ,      )
     Plaintiff,              )
                            )
     v.                      )
                            )
STATE OF RHODE ISLAND;      )
DEPARTMENT OF SAFETY; STATE   )      C.A. No. 20-cv-096-JJM-PAS
POLICE; and LIEUTENANT        )
MICHAEL CASEY, individually and in )
his capacity as a police officer       )
employed by the State of Rhode Island, )
     Defendants.          )
                            )

## ORDER

Plaintiff Harlan Shabshelowitz, a self-described "middleman" in a real estate transaction in Narragansett, Rhode Island between a buyer and seller, paid out and received funds from the sale of that property.  The property sale and related transactions raised red flags for law enforcement, resulting in an investigation and grand jury indictments for several individuals, including Mr. Shabshelowitz.  He was indicted on two criminal counts: obtaining money under false pretenses and conspiracy to obtain money under false pretenses.  He moved to dismiss those charges in state court arguing that Rhode Island State Police Lieutenant Michael Casey, also a defendant here, maliciously prosecuted him.  Two state courts denied his motions; however, the case ultimately ended with the State dismissing the charges.

Mr. Shabshelowitz filed a one count Complaint for malicious prosecution against Defendants State of Rhode Island, Department of Public Safety, Rhode Island

State Police (collectively, the "State Police") and Lt. Casey, individually and in his official capacity (collectively "Defendants"). Defendants move for summary judgment, arguing initially that collateral estoppel bars the claim but also that it fails on the merits. ECF No. 53. Because the Court agrees that Mr. Shabshelowitz has already litigated this claim in state court, collateral estoppel applies and so the Court dismisses this action.

## I.    BACKGROUND

Eugene O'Brien bought property at 375 Ocean Road, Narragansett, Rhode Island ("Property") from Freddie Carrozza for $ 2.4 million, with a mortgage from Coastway Credit Union ("Coastway") for $ 2.28 million. He secured this financing in part based on local realtors Verna Gauthier and Joseph Lyman's appraisals of the Property for $2.4 million, but it appeared that the Property's actual value was much less. Mr. O'Brien lost the Property to foreclosure after he defaulted on his loan. It was sold for $610,000 nearly four years later, resulting in a net loss of over $1,670,000.

The original transaction between Mr. O'Brien and Mr. Carrozza garnered some suspicion in Narragansett, prompting retired Rhode Island State Police Officer Thomas Denniston and realtor, John Hodnett of Lila Delman Real Estate, to alert Lt. Casey. Officer Denniston was concerned that the Property was bought by "straw buyers" at an inflated price. Lt. Casey launched an investigation and identified several incidents of suspicious activity surrounding the transaction. He focused not only on the purchase price and the loan that secured the purchase which were

ADD. 2

believed to be overinflated,[1] but also the back-and-forth of the transaction itself where it appears that loan proceeds changed hands freely between Mr. Shabshelowitz and other players.  Lt. Casey originally interviewed Ms. Shabshelowitz about his role in the real estate transaction, thinking he might be just a witness, but eventually came to believe that he played a part in the illegal scheme.

Mr. O'Brien was arrested on charges of obtaining money under false pretenses and conspiracy to obtain money under false pretenses.  Soon after, the Rhode Island Attorney General assembled a grand jury and presented evidence about the mortgage fraud in connection with the sale.  During those proceedings, the State presented testimony from Lt. Casey[2] and other State Police detectives, over 250 exhibits, and an Affidavit of unindicted co-conspirator David Gauthier, who provided details of the

---

[1] Because this suit deals only with whether the State maliciously prosecuted Mr. Shabshelowitz and this motion is based on collateral estoppel, the Court expresses no opinion on the merits of the underlying state case rising from the real estate transaction.   Therefore, the Court's factual recitation of the underlying criminal case is purposefully brief.

[2] Lt. Casey's investigation consisted of, in part: researching the Narragansett land evidence records and obtaining the loan files; reviewing emails between Mr. Hodnett and closing attorney, Marc Greenfield, at the time of the sale in September 2006, where Mr. Hodnett predicted that the Property would likely foreclose; interviewing two licensed realtors who opined that, at the time of sale, the value of the Property was "at best" between $900,000 and $1,000,000; interviewing the highest bidder on the Property before the sale who, upon confirming his offer for $900,000, opined that the Property was a "mess" and that he intended to raze the residence to build a new one if his bid was successful; interviewing the Narragansett Tax Assessor, John Majeika, about a tax appraisal done by Appraisal Resources that assessed the Property at a value close to Mr. O'Brien's purchase price who noted that the value in the appraisal letter sent to Mr. Carrozza was not only indefensible, but that he never saw or approved the letter, to which his signature was affixed, before it was sent.

ADD. 3

sale and Mr. Shabshelowitz's involvement. After thirteen months of proceedings, the grand jury indicted Mr. Shabshelowitz.

Following his indictment, Mr. Shabshelowitz moved to dismiss the criminal charges against him, accusing Lt. Casey of misconduct in the grand jury proceedings. He claimed that the State was guilty of prosecutorial misconduct because it presented false evidence that led to the decision to indict, tampered with a tape of his interview with Lt. Casey, identified a document as false, and withheld an insurance appraisal that matched the mortgaged value.[3] A state court Magistrate rejected his arguments and he appealed to Rhode Island Superior Court, where an Associate Justice also denied his motion to dismiss the indictment. The indictment stood but eventually the Attorney General dismissed all charges against Mr. Shabshelowitz as part of a larger plea bargain deal with other co-conspirators.

Mr. Shabshelowitz filed this Complaint against the Rhode Island State Police and Lt. Casey, in his official and individual capacities, under the Fourth and Fourteenth Amendments to the United States Constitution, actionable pursuant to 42 U.S.C. § 1983, and Article I, § 6 of the Rhode Island Constitution. He alleges that

---

[3] The grand jury heard about three appraisals—the two that supported Mr. O'Brien's $2.4 million loan and one from Andolfo Appraisal Associates, who the Rhode Island Attorney General hired, to perform a forensic appraisal review of two supportive appraisals contained within Coastway's loan file. Andolfo found neither of the appraisals to be defensible or credible. The third appraisal from Chubb Insurance, which the grand jury did not learn about, was for replacement value, considering the purchase price rather than actual value. Additionally, Lt. Casey testified that he did not learn of the Chubb appraisal until this litigation; he did not present this evidence to prosecutors and/or the grand jury because he did not have it.

ADD. 4

Lt. Casey manipulated evidence presented to the grand jury about the Property's value and withheld exculpatory evidence. Defendants move for summary judgment. ECF No. 53.

## I.    STANDARD OF REVIEW

When making a summary judgment determination, the Court must review the entire record and consider the facts and inferences in the light most favorable to the nonmoving party. *Cont'l Cas. Co. v. Canadian Univ. Ins. Co.*, 924 F.2d 370, 373 (1st Cir. 1991). Federal Rule of Procedure 56(a) dictates that summary judgment should be granted if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A genuine dispute of material fact is an issue that "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A dispute is "genuine" when "the evidence about the fact is such that a reasonable jury could resolve the point in favor of the nonmoving party." *Rivera-Muriente v. Agosto-Alicea*, 959 F.2d 349, 352 (1st Cir. 1992) (citing *United States v. One Parcel of Real Prop.*, 960 F.2d 200, 204 (1st Cir. 1992)). If there is a genuine dispute of a material fact, that dispute would "need[ ] to be resolved by a trier of fact." *Doe v. Tr. of Bos. Coll.*, 892 F.3d 67, 79 (1st Cir. 2018) (citing *Kelley v. LaForce*, 288 F.3d 1, 9 (1st Cir. 2002)).

## II.    DISCUSSION

Two Rhode Island state courts denied Mr. Shabshelowitz's motion to dismiss his state charges, rejecting his arguments that his indictment was procured by fraud and misconduct. Now Defendants ask this Court to give these state court judgments

ADD. 5

preclusive effect under the doctrine of collateral estoppel. Alternatively, Defendants also move on the merits. Because a determination that Mr. Shabshelowitz has litigated this claim in state court bars his suit here is dispositive, the Court will begin there.

### Collateral Estoppel

"[C]ollateral estoppel bars re-litigation of any issues that were, or could have been, brought in a previous action for which judgement was rendered." *Núñez Colón v. Toledo-Dávila*, 648 F.3d 15, 19 (1st Cir. 2011) (citing *Barreto–Rosa v. Varona–Mendez*, 470 F.3d 42, 45 (1st Cir. 2006)). "This policy helps to conserve judicial resources, relieve parties of the burden of re-litigating settled issues, and prevent inconsistent rulings." *Wade v. Brady*, 460 F. Supp. 2d 226, 239 (D. Mass. 2006) (citing *Allen v. McCurry*, 449 U.S. 90, 94 (1980)). "Collateral estoppel is typically applied by federal courts to issues that have been previously litigated in state court in order to promote comity between state and federal courts." *Id.*; *Johnson v. Mahoney*, 424 F.3d 83, 93 (1st Cir. 2005).

Collateral estoppel "requires: (1) an identity of issues; (2) a valid and final judgment on the merits; and (3) establishing that the party against whom collateral estoppel is asserted was a party or in privity with a party to the prior action." *Wiggins v. Rhode Island*, 326 F. Supp. 2d 297, 303 (D.R.I. 2004) (citing *State v. Santiago*, 847 A.2d 252, 254 (R.I. 2004)). "The identity of the issues need not be absolute; rather, it is enough that the issues are in substance identical." *Manganella v. Evanston Ins. Co.*, 700 F.3d 585, 591 (1st Cir. 2012). "As the Restatement of

ADD. 6

Judgments points out, when a party has litigated such an 'ultimate fact,' and failed, 'new evidentiary facts' may not be brought forward to obtain a different determination of that ultimate fact." *DeCosta v. Viacom Int'l, Inc.*, 981 F.2d 602, 611 (1st Cir. 1992) (quoting *Restatement (Second) of Judgments* § 27, cmt. c.).

While Mr. Shabshelowitz raises thin arguments that Defendants have not met the second and third elements, the Court finds from the record that they have. Because the main discussion points are based on the identity of issues element, the Court focuses its analysis there.

### Identity of Issues

Mr. Shabshelowitz's claim in state court and here is for malicious prosecution.[4] Essentially, Mr. Shabshelowitz argues that the issues raised and resolved in the state

---

[4] To recover damages for malicious prosecution, a party must "prove that (1) defendants initiated a prior criminal proceeding against him, (2) they did not have probable cause to initiate such a proceeding, (3) the proceeding was instituted maliciously, and (4) it terminated in [plaintiff's] favor." *Solitro v. Moffatt*, 523 A.2d 858, 861-62 (R.I. 1987) (citing *Nagy v. McBurney*, 392 A.2d 365 (1978)). Because malicious prosecution cases are disfavored as they may deter prosecutors from doing their jobs, *Solitro*, 523 A.2d at 862 (citing *Powers v. Carvalho*, 368 A.2d 1242 (1977)), a plaintiff must establish "clear proof" of malice and lack of probable cause. *Soares v. Ann & Hope of Rhode Island, Inc.*, 637 A.2d 339, 345 (R.I. 1994) (citing *Solitro*, 523 A.2d at 862).

The Rhode Island Supreme Court "declared that when the plaintiff was bound over by a court and indicted by the grand jury, satisfactory evidence of probable cause was established." *Hill v. Rhode Island State Emp. Ret. Bd.*, 935 A.2d 608, 613 (R.I. 2007) (citing *Giusti v. Del Papa*, 33 A. 526 (1896)). Mr. Shabshelowitz was indicted so in order "[t]o rebut a presumption of probable cause arising from a grand jury indictment, [he] must allege some additional fact showing fraud, perjury, or other undue means." *Id.* at 613-14. "If the allegation is unsupported by clear proof of malice, then it is refuted by the fact that the plaintiff actually was indicted by a grand jury." *Id.* at 614.

ADD. 7

case are not identical to those he pleads here. Yet a closer review of the record leads the Court to disagree.

In his state motions, Mr. Shabshelowitz argued that the State engaged in about twenty instances of prosecutorial misconduct, including the presentation of false and manipulated evidence. He thoroughly litigated and challenged whether Lt. Casey and the other prosecution witnesses were being truthful and whether their investigation was thorough as to the Property values evidence. Specifically, he claimed that the State presented false evidence, tampered with a tape of his interview with Lt. Casey, identified a document as false, and withheld an insurance appraisal that tracked the mortgaged value. Mr. Shabshelowitz argued that, but for Lt. Casey's presentation of "flagrant, egregious and prejudicial" evidence, he would not have been indicted.

In his hearing on the motion before a Superior Court Magistrate Judge, Mr. Shabshelowitz testified that Lt. Casey manipulated a tape recording of his testimony in addition to other evidence attacking both the sufficiency and integrity of the evidence supporting probable cause. After hearing all the evidence, the Magistrate Judge held that his claim that the State indicted him because of prosecutorial misconduct were "without merit." He appealed this decision to the Rhode Island Superior Court where that court reviewed the record de novo and determined that Mr. Shabshelowitz "ha[d] not presented evidence of any misconduct by the prosecutor that rose to the level of justifying dismissal[,]" which would be "appropriate only if 'it is established that the violation substantially influenced the

ADD. 8

grand jury's decision to indict' or if there is 'grave doubt' that the decision to indict was free from substantial influence of such violations." The state courts heard considerable testimony from both sides before finding that there was not enough evidence to find that Lt. Casey and others maliciously prosecuted this case against Mr. Shabshelowitz.

Here, Mr. Shabshelowitz relies on the same issues and evidence to argue that the grand jury would not have indicted him without Lt. Casey's false information and malicious prosecution. For example, Mr. Shabshelowitz alleges in his Complaint that during the grand jury proceedings "Defendant Casey withheld and/or manipulated exculpatory evidence related to the Plaintiff's involvement in the 2006 transaction and his receipt of monies from same" and that the "exculpatory evidence withheld and/or manipulated by Defendant Casey, if presented truthfully and accurately, would not have risen to the level of probable cause needed in order to indict the Plaintiff." ECF No. 26 ¶¶ 20, 22. He also acknowledges that, "In his supplemental motion to dismiss, the Plaintiff stated that the Defendants 'presented false evidence to the grand jury and because its principal witness [Defendant Casey], either lied or misrepresented facts, to the grand jury.'" *Id.* ¶ 30. Mr. Shabshelowitz further alleges in his Complaint that "Defendant Casey represented that the March 9, 2006, letter from the Town of Narragansett was 'false, fraudulent, and forged,'" "[a] State exhibit entitled 'History of 375 Ocean Road' was materially altered," and "[t]here is a mandatory insurance binder(s) [the Chubb appraisal] missing that contained a $2.5 million valuation(s) of the Narragansett Property." *Id.* ¶ 21e. The Court finds that

ADD. 9

the issues Mr. Shabshelowitz raised in state court are "in substance identical" to the issues raised here, *Manganella*, 700 F.3d at 591, so the identity of issues element of collateral estoppel has been satisfied.

"In order to use the doctrine of collateral estoppel defensively, as Defendants purport to here, it must be clear that the party opposing its usage had a 'full and fair opportunity to litigate an issue' in a prior lawsuit." *Wiggins v. Rhode Island*, 326 F. Supp. 2d 297, 303 (D.R.I. 2004) (citing *Standefer v. United States*, 447 U.S. 10, 24 (1980))); *State v. Wiggs*, 635 A.2d 272, 276 (R.I. 1973) (collateral estoppel applies when plaintiff "had a full and fair opportunity to present evidence and call witnesses" in the state action). Mr. Shabshelowitz had a full evidentiary hearing in which the court heard his testimony and that of Narragansett Town Assessor Majeika and Appraisal Resources President Richard Berlinsky. And Mr. Shabshelowitz did not appeal the Superior Court decision; "failure to appeal an adverse judgment negates the preclusive effect of that judgment only when review was unobtainable 'as a matter of law.' Where review is available but is not sought, estoppel applies." *Wiggins*, 326 F. Supp. 2d at 305 (citing *Pinkney v. Keane*, 920 F.2d 1090, 1096 (2d Cir. 1990) (citation omitted)).

Mr. Shabshelowitz litigated his malicious prosecution claim in state court and failed. Because he has "litigated such an 'ultimate fact,' and failed, 'new evidentiary facts' may not be brought forward to obtain a different determination of that ultimate fact." *DeCosta*, 981 F.2d at 611. The Court finds that collateral estoppel applies and grants Defendants' motion for summary judgment.

ADD. 10

III.    **CONCLUSION**

Mr. Shabshelowitz fully litigated his malicious prosecution claim in state court, lost, and decided not to appeal.  Because the issues in state court are identical to those brought here (and there was a final disposition and the parties are the same), collateral estoppel bars him from re-litigating a claim he already lost.  The Court GRANTS Defendants' Motion for Summary Judgment.  ECF No. 53.


IT IS SO ORDERED.

_____
John J. McConnell, Jr.
Chief United States District Judge

July 22, 2024

ADD. 11

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF RHODE ISLAND

**HARLAN SHABSHELOWITZ,**
     **Plaintiff,**

     **v.**                      **C.A. No. 20-96 JJM**

**STATE OF RHODE ISLAND**
**DEPARTMENT OF PUBLIC SAFETY,**
**et al.,**
     **Defendants.**

## <u>JUDGMENT</u>

[   ]  Jury Verdict.  This action came before the Court for a trial by jury.  The issues have been tried and the jury has rendered its verdict.

[ **X** ]  Decision by the Court.  This action came to trial or hearing before the Court.  The issues have been tried or heard and a decision has been rendered.


IT IS ORDERED AND ADJUDGED:

     Judgment hereby enters for the Defendants and against Plaintiff pursuant to the Order entered by this Court on July 22nd, 2024.


                              Enter:

                              <u>/s/ Ryan H. Jackson</u>
                              Deputy Clerk

Dated: July 22, 2024

ADD. 12